USAO#2013R0215

_____ FILED      _____ ENTERED
_____ LOGGED     _____ RECEIVED

MAY 0 1 2013

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. CCB-13-0222 |
| | * | |
| v. | * | (Conspiracy to Distribute a Controlled |
| | * | Substance, 21 U.S.C. § 846; Attempted |
| JOHN DOE, | * | Witness Murder, 18 U.S.C. § |
| a/k/a "Dread Pirate Roberts" | * | 1512(a)(1)(C); Use of Interstate |
| | * | Commerce Facilities in Commission of |
| | * | Murder-for-Hire, 18 U.S.C. § 1958(a); |
| Defendant | * | Aiding and Abetting, 18 U.S.C. § 2) |
| | * | |
| | * | (FILED UNDER SEAL) |

*******

## INDICTMENT

## COUNT ONE

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to this Indictment:

1.      Defendant **JOHN DOE, a/k/a "Dread Pirate Roberts,"** owned and operated "Silk Road," an online international marketplace that allowed its users to buy and sell controlled dangerous substances, including cocaine, and other contraband over the Internet. Silk Road is accessible via a website.

2.      Silk Road protected the anonymity of its users in several ways, including by using Tor technology. Tor was a system intended to enable online anonymity. Tor software routed the user's Internet traffic through a worldwide network of volunteer servers to conceal a user's location and Internet usage. Tor communications were also encrypted to conceal the contents of communications to all parties except for the intended recipient.

3.      As a further measure to protect the anonymity of its users, Silk Road required all transactions to be conducted in Bitcoin.  Bitcoin was a digital currency that had no association with banks or a government.  Bitcoin was used because it is difficult to track and easy to move online.

4.      Silk Road users had to create an account and a username.  Silk Road users were instructed to use aliases as their username and never to disclose their true name.  The creator, owner, and operator of Silk Road used the alias "Dread Pirate Roberts."

## Manner and Means of the Conspiracy

5.      It was part of the conspiracy that **JOHN DOE, a/k/a "Dread Pirate Roberts,"** profited from the operation of Silk Road by collecting for each transaction a sum equal to approximately 6 to 10 percent of the total value of the transaction.

6.      It was further part of the conspiracy that **JOHN DOE, a/k/a "Dread Pirate Roberts,"** interacted with other Silk Road users through various written communications, including welcome messages, updates on changes to Silk Road, and alerts or apologies when Silk Road is malfunctioning.

7.      It was further part of the conspiracy that controlled dangerous substances were distributed and trafficked on Silk Road.  Firearms and forged documents were also trafficked and distributed on Silk Road.

8.      It was further part of the conspiracy that **JOHN DOE, a/k/a "Dread Pirate Roberts,"** conspired with others referred to herein as "employees" to assist in the operation of Silk Road.  The employees of Silk Road had many tasks, including responding to complaints from buyers and sellers, adjudicating disputes between buyers and sellers, resetting passwords for individuals locked out of their Silk Road accounts, and responding to complaints about possible law

2

enforcement activity on Silk Road.

9.     It was further part of the conspiracy that **JOHN DOE, a/k/a "Dread Pirate Roberts,"** and co-conspirators used two methods of communicating via the Internet. The first is TorChat. TorChat is a peer-to-peer instant messenger that uses Tor technology to enable users to communicate in real time and share files anonymously. Silk Road also had an internal email system that allowed users to send emails to other Silk Road users by using the Silk Road usernames for recipient and sender addresses.

## The Charge

10.     Beginning in or about May 2011, and continuing until at least in or about April 2013, in the District of Maryland and elsewhere, the defendant,

**JOHN DOE,**
**a/k/a "Dread Pirate Roberts,"**

knowingly and unlawfully combined, conspired, confederated and agreed with others both known and unknown to the Grand Jury, to distribute and possess with intent to distribute:

a.     one kilogram or more of a mixture or substance containing heroin, a Schedule I controlled substance,

b.     five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance,

c.     280 grams or more of a mixture or substance which contains cocaine base, a Schedule II controlled substance,

d.     a quantity of a mixture or substance containing marijuana, a Schedule I controlled substance,

3

e.    a mixture or substance containing alprazalam, also known as Xanax, a Schedule IV controlled substance,

f.    a mixture or substance containing buprenorphine, also known as Suboxone, a Schedule III controlled substance,

g.    a mixture or substance containing a detectable amount of 3-4 methylenedioxy-methamphetamine, also known as MDMA, a Schedule I controlled substance, and

h.    a mixture or substance containing methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance,

in violation of Title 21, United States Code, Section 841(a).

21 U.S.C. § 846

## COUNT TWO

The Grand Jury for the District of Maryland further charges that:

1.      The allegations of Paragraphs 1 through 4 of Count One are incorporated here.

2.      In or about December 2012 and January 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** arranged for the purchase of cocaine from a seller in Maryland over Silk Road.

3.      On or about January 17, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** caused the delivery of one kilogram of cocaine to CCG, in Spanish Fork, Utah.   CCG was an employee of **JOHN DOE, a/k/a "Dread Pirate Roberts."**

4.      On or about January 26, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** communicated with an individual in Maryland via the Internet, and told that individual that CCG had been arrested by law enforcement and that CCG had stolen funds from other Silk Road users. **JOHN DOE, a/k/a "Dread Pirate Roberts,"** asked that individual to arrange for CCG to be beaten and forced to return the money, stating specifically, "I'd like him beat up, then forced to send the bitcoins he stole back.  like sit him down at his computer and make him do it[.]"

5.      On or about January 27, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** communicated with an individual in Maryland via the Internet, and asked that individual: "can you change the order to execute rather than torture?" **JOHN DOE, a/k/a "Dread Pirate Roberts,"** wrote that CCG "was on the inside for a while, and now that he's been arrested, I'm afraid he'll give up info[,]" and added that he had "never killed a man or had one killed before, but it is the right move in this case."

6.      On or about January 29, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** communicated with an individual in Maryland via the Internet, and agreed to make two payments

5

of $40,000 each for the murder of CCG, "half down now and half after the job is done." The individual in Maryland provided **JOHN DOE, a/k/a "Dread Pirate Roberts,"** with a bank account number at Capital One Bank in Washington, D.C. to which to wire the money.

7.   On or about January 31, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** communicated with an individual in Maryland via the Internet, to further discuss the murder of CCG.

8.   On or about February 4, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** caused approximately $40,000 to be wired from Technocash Limited in Australia to a bank account at Capital One Bank in Washington, D.C. as payment for the murder of CCG.

9.   On or about February 5, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** communicated with an individual in Maryland via the Internet, to discuss the murder of CCG. **JOHN DOE, a/k/a "Dread Pirate Roberts,"** wrote that he wanted "proof of death," and instructed the individual to "ask for a video, if they can't do that, then pictures" of CCG's death. **JOHN DOE, a/k/a "Dread Pirate Roberts,"** stated that "they should probably just give him the note, let him use his computer to send the coins back, and then kill him[.]" **JOHN DOE, a/k/a "Dread Pirate Roberts,"** further explained that "im more concerned about silencing him than getting that money back[,]" and "considering his arrest, I have to assume he will sing."

10.   On or about February 12, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** communicated with an individual in Maryland via the Internet, to discuss the murder of CCG. **JOHN DOE, a/k/a "Dread Pirate Roberts,"** was told that CCG "is still alive but being tortured" for the stolen money.

11.   On or about February 16, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** communicated with an individual in Maryland via the Internet, to discuss the murder of CCG.

6

**JOHN DOE, a/k/a "Dread Pirate Roberts,"** stated that he was "a little disturbed, but I'm ok, " and that "I'm new to this kind of thing is all[.]"

12.     On or about February 19, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** received an email from an individual in Maryland stating that "[CCG] is dead[,] they killed him this weekend[,] don't have details yet, and I'm waiting for a photo[.]"

13.     On or about February 21, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** contacted an individual in Maryland via the Internet, to discuss the murder of CCG. **JOHN DOE, a/k/a "Dread Pirate Roberts,"** was told that CCG "died of asphyxiation/heart rupture" while being tortured. **JOHN DOE, a/k/a "Dread Pirate Roberts,"** stated that "I'm pissed I had to kill him ... but what's done is done[,]" and that "I just can't believe he was so stupid[,] . . . I just wish more people had some integrity[.]"

14.     On or about February 28, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** contacted an individual in Maryland via the Internet, to discuss the murder of CCG. **JOHN DOE, a/k/a "Dread Pirate Roberts,"** was told that CCG's body was completely destroyed to eliminate evidence and asked to make sure the second $40,000 payment for the murder of CCG was sent.

15.     On or about March 1, 2013, **JOHN DOE, a/k/a "Dread Pirate Roberts,"** caused approximately $40,000 to be wired from Technocash Limited in Australia to a bank account at Capital One Bank in Washington, D.C. as payment for the murder of CCG.

16.     From on or about January 27, 2013, to on or about March 1, 2013, in the District of

Maryland, and elsewhere, the defendant,

**JOHN DOE,**
**a/k/a "Dread Pirate Roberts,"**

did attempt to kill CCG, with intent to prevent the communication by CCG to a law enforcement

officer of the United States of information relating to the commission and possible commission of

a Federal offense, to wit: narcotics conspiracy in violation of Title 21, United States Code, Section

846.

18 U.S.C. § 1512(a)(1)(C)
18 U.S.C. § 2

## COUNT THREE

The Grand Jury for the District of Maryland further charges:

1.      The allegations of Paragraphs 1 through 4 of Count One and Paragraphs 2 through 15 of Count Two are incorporated here.

2.      From on or about January 27, 2013, to on or about March 1, 2013, in the District of Maryland, and elsewhere, the defendant,

**JOHN DOE,**
**a/k/a "Dread Pirate Roberts,"**

did knowingly use and cause another to use a facility in interstate commerce, with intent that a murder be committed in violation of the laws of any State and the United States as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value.

18 U.S.C. § 1958(a)
18 U.S.C. § 2

## FORFEITURE ALLEGATIONS

1.    As a result of the offenses set forth in Counts One through Three, the defendant,

### JOHN DOE,
### a/k/a "Dread Pirate Roberts,"

shall forfeit to the United States (1) any and all property obtained directly or indirectly as a result

of any such violation, and (2) any and all property used, or intended to be used, in any manner or

part to commit and to facilitate the commission of any such violation charged in this indictment.

2.    If, as a result of any act or omission of a defendant, any such property subject to

forfeiture:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided
    without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to

seek forfeiture of any other property of said defendants up to the value of all property set forth in

paragraph 1 above.

21 U.S.C. § 853

/s/ Rod Rosenstein
ROD J. ROSENSTEIN
United States Attorney

A TRUE BILL:

# SIGNATURE REDACTED

Foreperson

Date:   May 1, 2013

10